Tyrone R. Childress (CA Bar No. 136795)
Erna Mamikonyan (CA Bar No. 302000)
Kelsey S. Bryan (CA Bar No. 307577)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071-2300
Telephone: (213) 489-3939
Facsimile:  (213) 243-2589
E-mail:  tchildress@jonesday.com
E-mail:  emamikonyan@jonesday.com
E-mail:  kbryan@jonesday.com

John M. Majoras  (D.C. Bar No. 474267, *pro hac forthcoming*)
Kristen A. Lejnieks (D.C. Bar No. 502136, *pro hac* forthcoming)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001.2113
Telephone:  +1.202.879.3939
Facsimile:  +1.202.626.1700
E-mail:  jmmajoras@jonesday.com
E-mail:  kalejnieks@jonesday.com

Attorneys for Defendant
UNION PACIFIC RAILROAD COMPANY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kia Motors America, Inc., | Case No. 8:19-cv-01881-JLS |
| Plaintiff, | **UNION PACIFIC RAILROAD COMPANY'S ANSWER TO PLAINTIFF KIA MOTORS AMERICA, INC.'S COMPLAINT** |
| v. | |
| BNSF Railway Company, CSX Transportation, Inc., Norfolk Southern Railway Company, and Union Pacific Railroad Company, | District Judge:  Hon. Josephine L. Staton<br>Magistrate Judge:  Hon. Karen E. Scott |
| Defendants. | |

Defendant Union Pacific Railroad Company ("UP"), for itself only, answers the Complaint ("Complaint") of Kia Motors America, Inc. ("Plaintiff"), as set forth below.  UP denies each and every allegation of the Complaint, except as

specifically stated, and denies that it violated in any way the antitrust laws under which Plaintiff purports to bring this action.

## RESPONSE TO PLAINTIFF'S ALLEGATIONS

UP responds to the allegations of the Complaint's separately numbered paragraphs, as follows:

## NATURE OF THE ACTION

1.      UP admits that both before and after 2003 it collected fuel surcharges from certain customers as a cost-recovery mechanism.  UP denies the remaining allegations in this paragraph.

2.      UP admits that Defendants compete with respect to certain traffic.  UP admits that a document titled Surface Transportation Board, Office of Economics, Environmental Analysis & Administration Section of Economics, January 16, 2009, Study of Railroad Rates: 1985-2007, stated the quoted language attributed to it in this paragraph.  UP denies Plaintiff's characterization of that document.  UP further admits that a document produced in *In re: Rail Freight Fuel Surcharge Antitrust Litigation*, Case No. 07-489 (D.D.C.) ("the Putative Class Action") contained the language quoted in the last sentence of this paragraph, but denies Plaintiff's characterization of the document.  UP denies the remaining allegations in this paragraph.

3.      UP admits that, prior to 2003, railroads had fuel surcharges that they used with certain customers.  UP admits that a document produced in the Putative Class Action which Plaintiff describes as "a May 2002 Enterprise Wide Risk Assessment" contained the quoted language Plaintiff attributes to it.  UP denies Plaintiff's characterization of that document.  UP admits that a document produced in the Putative Class Action contained the quoted language attributed to Norfolk Southern Railway Company's ("NS") Pat Glennon in this paragraph.  UP denies Plaintiff's characterization of that document.  UP admits that an email produced in the Putative Class Action sent by Bob Toy stated the quoted language attributed to

Union Pacific Railroad Company's Answer to
Plaintiff's Complaint 8:19-cv-01881

1  it in this paragraph.  UP denies Plaintiff's characterizations of that document.  UP
2  denies the remaining allegations in this paragraph.

3      4.    UP admits that it entered into private freight transportation contracts
4  after passage of the Staggers Act and that some of those contracts included rate
5  escalation provisions tied to various cost indices.  UP denies that the Rail Cost
6  Adjustment Factor ("RCAF") or the All Inclusive Index ("AII") captured its actual
7  increases in fuel costs.  UP admits that James R. Young stated in an earnings
8  conference call in October 2004 that "RCAF is what it is. It looks at actual costs
9  through the industry."  UP denies that Mr. Young's statement meant that
10  adjustments based on RCAF permitted full and timely recovery of actual fuel cost
11  increases.  During that same earnings call, Mr. Young explained that UP uses fuel
12  surcharges "to neutralize the volatility of fuel prices."  UP denies the remaining
13  allegations in this paragraph.

14      5.    UP admits that the Surface Transportation Board ("STB") issued a
15  ruling in January 2007 directed to rate-based rail fuel surcharges related to
16  regulated traffic.  UP asserts that the ruling speaks for itself and on that basis denies
17  Plaintiff's characterization of the ruling, which is inappropriate for a complaint and
18  should be stricken.  UP denies the remaining allegations in this paragraph.

19      6.    UP lacks sufficient information to form a belief about the truth of the
20  allegation in the first sentence or last sentence of this paragraph, and on that basis
21  denies them.  UP admits that one item on a multi-part agenda for a planned meeting
22  involving UP and CSX Transportation, Inc. ("CSX") in March 2003 was "fuel
23  surcharge methodology."  UP denies Plaintiff's characterizations of that document.
24  UP denies the remaining allegations in this paragraph.

25      7.    UP admits that a document produced in the Putative Class Action
26  contained the quoted language attributed to it in this paragraph.  UP denies
27  Plaintiff's characterizations of that document.  UP denies the remaining allegations
28  in this paragraph.

1       8.    UP admits that on March 20, 2003, CSX issued a press release titled

2   "CSX Transportation Announces Modifications To Its Fuel Cost Recovery

3   Program."  UP admits that in April 2003, it announced and sought concurrence for

4   a change to the calculation of one of its WTI-index based fuel surcharges, which

5   UP did not ultimately implement.  UP denies Plaintiff's characterizations of these

6   events and documents concerning them.  UP denies the remaining allegations in

7   this paragraph.

8       9.    UP lacks sufficient information to form a belief about the truth of the

9   allegations in this paragraph, and on that basis denies them.

10      10.    UP admits that a document produced in the Putative Class Action

11  contained the quoted language in this paragraph.  That same document also

12  identified differences between BNSF's and UP's intended fuel surcharge

13  approaches. UP denies Plaintiff's characterizations of that document.  UP denies the

14  remaining allegations in this paragraph.

15      11.    UP admits that documents produced in the Putative Class Action

16  contain the quoted language.  UP denies Plaintiff's characterizations of those

17  documents, including because these same documents illustrate continued

18  competition and unilateral, non-parallel conduct among Defendants.  UP denies the

19  remaining allegations in this paragraph.

20      12.    UP admits that there was a June 2003 alliance meeting between UP

21  and CSX, and that notes were taken of that meeting.  UP denies Plaintiff's

22  characterizations of that event and document.  UP denies the remaining allegations

23  in this paragraph.

24      13.    UP denies the first sentence of this paragraph.  UP admits that a

25  document produced by BNSF Railway Company ("BNSF") in the Putative Class

26  Action contains the language quoted in the last sentence of this paragraph.  UP

27  denies Plaintiff's characterizations of that document.  UP lacks sufficient

28  information to form a belief about the truth of the allegations concerning BNSF's

1  internal assessments, and on that basis denies them.  UP denies the remaining

2  allegations in this paragraph.

3      14.    UP denies the first sentence of this paragraph.  UP admits that

4  documents produced in the Putative Class Action contain the unbracketed words

5  quoted in the bullet points of this paragraph, without added emphasis.   UP denies

6  Plaintiff's characterizations of those documents.  UP denies the remaining

7  allegations in this paragraph.

8      15.    UP admits that the AII and the RCAF were indices published by the

9  Association of American Railroads ("AAR"), a railroad trade association, that

10 weighted a variety of cost factors.  UP denies that the AAR's announcement of the

11 AII-LF was pursuant to, or the result of, a conspiracy, or that the decision was

12 unlawful collective action.  UP denies the remaining allegations in this paragraph.

13     16.    UP admits NS's chief executive officer, Charles W. Moorman,

14 submitted a written statement to Congress in 2007 that stated the quoted language

15 in this paragraph.  UP denies Plaintiff's characterization of Mr. Moorman's

16 statements.  UP denies the remaining allegations in this paragraph.

17     17.    UP admits that a document titled, The Current Financial State Of The

18 Class I Freight Rail Industry ("Staff Report") states, among other things, the quoted

19 language in this paragraph and contains a chart similar to Figure 1.  UP denies

20 Plaintiff's characterizations of the Staff Report, and denies Plaintiff's implication

21 that the statements in the Staff Report concern either fuel prices or fuel surcharges.

22 UP denies the remaining allegations in this paragraph.

23     18.    UP admits that the American Chemistry Council and an entity calling

24 itself Consumers United for Rail Equity issued a purported study of railroad fuel

25 surcharge revenue in 2007.  UP denies that that study accurately analyzed or

26 reported its fuel surcharge revenue or fuel costs.  UP denies the remaining

27 allegations in this paragraph.

28     19.    UP admits that documents filed in the Putative Class Action contained

the quoted language in this paragraph.  UP denies Plaintiff's characterizations of those documents.  UP denies the remaining allegations in this paragraph.

## PARTIES

20.     UP lacks sufficient information to form a belief about the truth of the allegations concerning Kia Motors America, Inc.'s corporate status, residence, and business. UP admits that Glovis America, Inc., from which Plaintiff was allegedly assigned the antitrust claim pleaded in the Complaint, purchased certain transportation services from UP during the relevant period.  UP lacks sufficient information to form a belief about the truth of the  allegations in this paragraph concerning Kia Motors America, Inc.'s purchase of unregulated rail freight transportation from other Defendants, and on that basis denies them.  UP denies the remaining allegations in this paragraph.

21.     UP admits that CSX is a major freight railroad with railway lines in the eastern United States. Based on a review of public filings, CSX's principal executive offices are located at 500 Water Street, 15th Floor, Jacksonville, FL 32202.  UP lacks sufficient information to form a belief about the truth of the remaining allegations in this paragraph.

22.     UP admits that NS is a major freight railroad with railway lines in the eastern United States.  Based on a review of public filings, NS's principal executive offices are located at Three Commercial Place Norfolk, Virginia 23510-2191.  UP lacks sufficient information to form a belief about the truth of the remaining allegations in this paragraph.

23.     UP admits that BNSF is a major freight railroad with railway lines in the western United States.  Based on a review of public filings, BNSF's principal executive office is located at 2650 Lou Menk Drive, Fort Worth, Texas 76131-2830.  UP lacks sufficient information to form a belief about the truth of the remaining allegations in this paragraph.

24.     UP admits the allegations in this paragraph.

**JURISDICTION AND VENUE**

25.    UP admits that the Complaint purports to plead federal antitrust claims against Defendants under Section 4 of the Clayton Act, 15 U.S.C. §15, and Section 1 of the Sherman Act, 15 U.S.C. §1.  UP denies it has violated the antitrust laws, or that the Complaint states a claim under those statutes.

26.    This paragraph states a legal conclusion for which no response is necessary.  To the extent a response is deemed required, UP denies the allegations in this paragraph.

27.    This paragraph states a legal conclusion for which no response is necessary.  To the extent a response is deemed required, UP denies the allegations in this paragraph.

28.    UP does not contest personal jurisdiction in this case.  UP denies all remaining allegations in this paragraph.

**INTERSTATE TRADE AND COMMERCE**

29.    UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph and on that basis denies them.

30.    UP admits that it sells rail transportation services that affect interstate commerce. UP denies that it has engaged in a conspiracy or has co-conspirators. UP denies the remaining allegations in this paragraph.

31.    UP denies the allegations in this paragraph.

**DEREGULATION OF THE RAILROAD INDUSTRY**

32.    UP admits that the Staggers Rail Act (the "Staggers Act") of 1980 partially deregulated the railroad industry.  The third sentence of this paragraph states legal conclusions to which no response is necessary.  To the extent a response is deemed required, UP denies this allegation.  UP denies the remaining allegations in this paragraph.

33.    UP admits that, prior to the Staggers Act, railroads generally charged rates established in published tariffs filed with the ICC. The second sentence of this

paragraph states legal conclusions to which no response is necessary. To the extent a response is deemed required, UP denies this allegation. UP denies the remaining allegations in this paragraph.

34. UP lacks sufficient information to form a belief about the truth of the allegation that 80 percent or more of all rail shipments move under private transportation contracts or are otherwise exempt from rate regulation, and on that basis denies it. UP denies that it has colluded on freight rates. UP denies the remaining allegations in this paragraph.

35. UP admits that there are now seven Class I railroads in the United States as Plaintiff defines the term, and that two of those railroads are owned by Canadian entities. UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph concerning other Defendants' percentage of track operation and revenues, and on that basis denies them. UP denies the remaining allegations in this paragraph.

36. UP denies the allegations in this paragraph.

**DEFENDANTS [ALLEGEDLY] SEEK UNSUCCESSFULLY TO RAISE RATES BEFORE THE RELEVANT PERIOD**

37. UP denies the unnumbered heading that appears before this paragraph. UP admits that a document titled, Study of Railroad Rates: 1985-2007 states the quoted language in this paragraph and contains a chart similar to Figure 1. UP denies Plaintiff's characterization of that document. UP denies the remaining allegations in this paragraph.

38. UP denies the allegation of this paragraph.

39. UP admits that documents produced in the Putative Class Action contained the quoted language in this paragraph. UP denies Plaintiff's characterizations of those documents. UP denies the remaining allegations in this paragraph.

40. UP admits that, prior to 2003, railroads had fuel surcharges that they

used with customers.  UP admits that documents produced in the Putative Class

Action contained the quoted language in this paragraph. UP denies Plaintiff's

characterizations of those documents.  UP denies the remaining allegations in this

paragraph.

41.    UP denies the allegations in this paragraph.

42.    UP admits that documents produced in the Putative Class Action

contained the quoted language in this paragraph.  UP denies Plaintiff's

characterizations of those documents.  UP denies the remaining allegations in this

paragraph.

43.    UP admits that documents produced in the Putative Class Action

contained the quoted language in this paragraph.  UP denies Plaintiff's

characterizations of those documents.  UP denies the remaining allegations in this

paragraph.

44.    UP admits that the RCAF included a factor for fuel costs as well as

other factors. UP denies that the RCAF captured its actual increases in fuel costs.

UP denies the remaining allegations in this paragraph.

45.    UP admits that a document produced in the Putative Class Action

contained the quoted language in this paragraph.   UP denies Plaintiff's

characterizations of that document.  UP denies that the RCAF captured its actual

increases in fuel costs.  UP denies the remaining allegations in this paragraph.

46.    UP denies the allegations in this paragraph.

**DEFENDANTS [ALLEGEDLY] CONSPIRE IN 2003 TO RAISE PRICES BY [ALLEGEDLY] ESTABLISHING AND BROADLY ENFORCING A COORDINATED RATE-BASED FSC PROGRAM AS MEANS TO INCREASE ALL-IN RATES**

47.    UP denies the unnumbered heading that appears before this paragraph.

UP denies the allegations in this paragraph.

48.    UP denies the allegations in this paragraph.

49.    UP denies the allegations in this paragraph.

50.     UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph, and on that basis denies them.

51.     UP admits that a fuel surcharge proposal was drafted in March 2003 that, among other changes, described an escalation of 0.4% for each dollar increase in the WTI index beyond $28.00.  UP denies Plaintiff's characterizations of that proposal.  UP denies the remaining allegations in this paragraph.

52.     UP admits that a document produced in the Putative Class Action contained the quoted language in this paragraph.  UP denies Plaintiff's characterizations of that document.  UP denies the remaining allegations in this paragraph.

53.     UP admits that a document produced in the Putative Class Action reflects a CSX news release dated March 20, 2003 titled CSX Transportation Announces Modifications To Its Fuel Cost Recovery Program, which stated that "the surcharge will be adjusted up or down 0.4% for every dollar increase or decrease in oil prices above $23/barrel.  These charges will be determined monthly based on the thirty-day average price of West Texas Intermediate (WTI) crude oil.  When fuel prices drop below $23/barrel, no fuel surcharge will apply."  UP denies Plaintiff's characterizations of that document.  UP denies the remaining allegations in this paragraph.

54.     UP admits that a document produced in the Putative Class Action reflects a CSX news release dated March 20, 2003 titled CSX Transportation Announces Modifications To Its Fuel Cost Recovery Program, which stated that "the surcharge will be adjusted up or down 0.4% for every dollar increase or decrease in oil prices above $23/barrel.  These charges will be determined monthly based on the thirty-day average price of West Texas Intermediate (WTI) crude oil.  When fuel prices drop below $23/barrel, no fuel surcharge will apply."  UP denies Plaintiff's characterizations of that document.  UP admits that a document produced in the Putative Class Action contained the quoted language in the last sentence of

1   this paragraph.  UP denies Plaintiff's characterizations of that document.  UP denies
2   the remaining allegations in this paragraph.

3       55.    UP admits that documents produced in the Putative Class Action
4   contained the quoted language in this paragraph. UP denies Plaintiff's
5   characterizations of those documents.  UP denies the remaining allegations in this
6   paragraph.

7       56.    UP admits that a document produced in the Putative Class Action titled
8   "BNSF - NS. Senior Team Meeting Agenda March 18, 2003" contained a section
9   describing a "General Business Review Discussion" on "Interline Volumes by
10  Business Group" and "Projections for Q-2," which included the quoted language in
11  this paragraph.  UP admits that, among others, the names David Goode, Steve
12  Tobias, Hank Wolf, Ike Prillaman, Jim McClellan, Mike McClellan, Mark Manion,
13  Don Seale, Matt Rose, Carl Ice, John Lanigan, Tom Hund, Pete Rickerhauseer, and
14  Steve Branscum are listed in the same document.  UP denies Plaintiff's
15  characterizations of that document.  UP denies the remaining allegations in this
16  paragraph.

17      57.    UP admits that a document produced in the Putative Class Action
18  contained the quoted language in this paragraph.  UP denies Plaintiff's
19  characterization of that document.  UP denies the remaining allegations in this
20  paragraph.

21      58.    UP admits that the National Freight Transportation Association held a
22  meeting in Litchfield Park, Arizona. UP admits that certain railroad executives
23  attended certain AAR board meetings at which appropriate topics concerning the
24  rail industry were discussed.  UP admits that a document produced in the Putative
25  Class Action contained the quoted language in this paragraph.  UP denies Plaintiff's
26  characterization of that document.  UP denies the remaining allegation in this
27  paragraph.

28      59.    UP admits that a document produced in the Putative Class Action was

1   titled "BNSF-CSX Alliance Meeting Jacksonville, FL April 1, 2003" and listed,

2   among others, the names Mike Giftos and John Lanigan.  UP denies the remaining

3   allegations in this paragraph.

4   60.    UP lacks sufficient information to form a belief about the truth of the

5   allegation about what BNSF was "leaning toward," and on that basis denies it.  UP

6   admits that a document produced in the Putative Class Action contained the quoted

7   language in this paragraph. UP denies Plaintiff's characterization of that document.

8   UP denies the remaining allegation in this paragraph.

9   61.    UP admits that in late 2002 it announced a carload fuel surcharge

10   based upon the WTI index, and that in 2003 it announced a carload fuel surcharge

11   based upon the HDF index. UP admits that prior to 2003 BNSF had fuel surcharges

12   that were based on the HDF index.  UP denies the remaining allegations in this

13   paragraph.

14   62.    UP admits that one of UP's carload fuel surcharges applied a surcharge

15   of 0.5 percent for every five cent increase above $1.35 per gallon in the HDF index,

16   and that this formula resulted in the same percentage surcharge as one of BNSF's

17   published surcharges above a price of $1.35 per gallon in the HDF index.  UP

18   admits that in 2003 it announced a carload fuel surcharge based upon the HDF

19   index.  UP denies the remaining allegations in this paragraph.

20   63.    UP denies the allegations in this paragraph.

21   64.    UP admits that one of UP's carload fuel surcharges applied a surcharge

22   of 0.5 percent for every five cent increase above $1.35 per gallon in the HDF index,

23   and that this formula resulted in the same percentage surcharge as one of BNSF's

24   published surcharges above a price of $1.35 per gallon in the HDF index.  UP

25   admits that the formula for one of its fuel surcharges applied changes to the

26   surcharge on the second month after a change in the HDF price.  UP denies the

27   remaining allegations in this paragraph.

28   65.    UP admits that it announced a change to the calculation of one of its

WTI-index based fuel surcharges in 2003 which it did not implement.  UP denies the remaining allegations in this paragraph.

66.     UP denies the allegations in this paragraph.

67.     UP admits that NS announced a change to the calculation of its WTI-index based fuel surcharges beginning in March 2004.  UP denies the remaining allegations in this paragraph.

68.     UP denies the allegations in this paragraph.

**[ALLEGED] PUBLICATION OF THE AIILF AND FIXING FSC RATES**

69.     UP denies the unnumbered heading that appears before this paragraph. UP denies the allegations in this paragraph.

70.     UP denies the allegations in this paragraph.

71.     UP admits that the AAR announced the AII-LF in the fall of 2003.  UP admits that the AII-LF is calculated using the same components and methods as the All-Inclusive Index uses for the Rail Cost Adjustment Factor, with the exception of the exclusion of the fuel component.  UP asserts that the AAR's publication speaks for itself.  UP denies that the AAR's announcement of the AII-LF was pursuant to, or the result of, a conspiracy, or that the decision was unlawful collective action. UP denies the remaining allegations in this paragraph.

72.     UP denies the allegations in this paragraph.

73.     UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph, and on that basis, denies them.

74.     UP denies the allegations in this paragraph.

75.     UP lacks sufficient information to form a belief about the allegations regarding the activities of the "Eastern Railroads," and on that basis denies them. UP denies the remaining allegations in this paragraph.

76.     UP denies the allegations in this paragraph.

77.     UP denies the allegations in this paragraph.

78.     UP admits that the AII and the RCAF both included a fuel cost

component and that UP used both indices from time to time.  UP denies the remaining allegations in this paragraph.

79.     UP denies the allegations in this paragraph.

80.     UP admits that a document produced in the Putative Class Action contained the quoted language in this paragraph. UP denies Plaintiff's characterization of that document.  UP denies the remaining allegations in this paragraph.

81.     UP denies the allegations in this paragraph.

82.     UP lacks sufficient information to form a belief about the truth of the allegations relating to the FSC percentages charged by other defendants, and on that basis, denies them.  UP denies the remaining allegations in this paragraph and the allegations contained in Footnote 1.

83.     UP denies the allegations in this paragraph.

84.     UP admits that it has altered its FSC programs at various times.  UP denies that those alterations were the result of or related to any conspiratorial or unlawful conduct.  UP denies the remaining allegations in this paragraph.

85.     UP denies the allegations in this paragraph.

86.     UP admits that a document produced in the Putative Class Action contained the quoted language in this paragraph.  UP denies Plaintiff's characterizations of that document.  UP admits that certain employees from UP attended an Alliance Meeting on June 3, 2003 but denies Plaintiff's characterization of that Alliance Meeting.  UP lacks sufficient information to form a belief about the allegations concerning BNSF and CSX employees, and on that basis, denies them. UP denies the remaining allegations in this paragraph.

87.     UP denies the allegations in this paragraph.

**[ALLEGED] IMPLEMENTATION OF THE SCHEME: DEFENDANTS' [ALLEGED] ACROSS-THE-BOARD APPLICATION OF**

1

**FSCS**

2

88.    UP denies the unnumbered heading that appears before this paragraph.

3

UP admits that documents produced in the Putative Class Action contained the

4

quoted language in this paragraph.  UP denies Plaintiff's characterizations of those

5

documents.  UP denies the remaining allegations in this paragraph.

6

7

89.    UP admits that documents produced in the Putative Class Action

8

contained the quoted language in this paragraph. UP denies Plaintiff's

9

characterizations of those documents.  UP denies the remaining allegations of this

10

paragraph.

11

90.    UP admits that documents produced in the Putative Class Action

12

contained the quoted term.  UP denies Plaintiff's characterization of them,

13

including because these same documents illustrate continued competition and

14

unilateral, non-parallel conduct among the Defendants.  UP denies the remaining

15

allegations in this paragraph.

16

91.    UP admits that a document produced in the Putative Class Action

17

contained the quoted language in this paragraph.  UP denies Plaintiff's

18

characterization of that document.  UP lacks sufficient information to form a belief

19

about the truth of the allegations concerning other defendants' marketing efforts

20

and on that basis, denies the remaining allegations in this paragraph.

21

92.    UP admits that a document produced in the Putative Class Action

22

contained the quoted language in this paragraph.  UP denies Plaintiff's

23

characterization of that document.  UP denies the remaining allegations in this

24

paragraph.

25

93.    UP admits that a document produced in the Putative Class Action

26

contained the quoted language in this paragraph.  UP denies Plaintiff's

27

characterization of that document.  UP denies the remaining allegations in this

28

paragraph.

94.     UP admits that a document produced in the Putative Class Action contained the quoted language in this paragraph.  UP denies Plaintiff's characterization of that document.  UP denies the remaining allegations in this paragraph.

95.     UP denies the allegations in this paragraph.

96.     UP admits that a document produced in the Putative Class Action contained the quoted language in this paragraph.  UP denies Plaintiff's characterization of that document.  UP denies the remaining allegations in this paragraph.

97.     UP denies the allegations in this paragraph.

98.     UP admits that a document produced in the Putative Class Action contained the quoted language in this paragraph. UP denies Plaintiff's characterization of that document.  UP denies the remaining allegations in this paragraph.

99.     UP admits NS's chief executive officer, Charles W. Moorman, submitted a written statement to Congress in 2007 which contained the quoted language in this paragraph.  UP denies Plaintiff's characterization of Mr. Moorman's statements.  UP denies the remaining allegations in this paragraph.

100.    UP denies the allegations in this paragraph.

## THE STB DECISION

101.    UP admits that the Surface Transportation Board ("STB") issued a ruling in January, 2007 directed to rail fuel surcharges.  UP asserts that the ruling speaks for itself and on that basis denies Plaintiff's characterization of the ruling, which is inappropriate for a complaint and should be stricken.

102.    UP admits that the STB issued a ruling in January, 2007 directed to rail fuel surcharges.  UP asserts that the ruling speaks for itself and on that basis denies Plaintiff's characterization of the ruling, which is inappropriate for a complaint and should be stricken.

1   103.   UP denies the allegations in this paragraph.

2   **THE [ALLEGED] CONSPIRACY SUCCEEDS**

3   104.   UP denies the unnumbered heading that appears before this paragraph.

4   UP denies the allegations in this paragraph.

5   105.   UP admits that documents produced in the Putative Class Action

6   contained the quoted language in this paragraph.  UP denies Plaintiff's

7   characterizations of those documents.  UP denies the remaining allegations in this

8   paragraph.

9   106.   UP admits that a document produced in the Putative Class Action

10   contained the quoted language in this paragraph.  UP denies Plaintiff's

11   characterization of that document.  UP denies the remaining allegations in this

12   paragraph.

13   107.   UP lacks sufficient information to form a belief about the truth of the

14   allegations concerning other defendants' costs and revenues, and on that basis

15   denies them.  UP denies the remaining allegations in this paragraph.

16   108.   UP lacks sufficient information to form a belief about the truth of the

17   allegations concerning other defendants' fuel efficiency, and on that basis denies

18   them.  UP denies the remaining allegations in this paragraph.

19   109.   UP admits that James Young stated in an interview in 2007 that UP is

20   now "putting in place fuel surcharge mechanisms" and that "three or four years ago

21   they were really nonexistent."  In response to a separate question concerning capital

22   investment, Mr. Young stated that UP is committed to a high level of capital

23   spending as long as UP's financial returns continue to improve.  He added that it

24   has only been in the last couple of years that the financial returns in the rail

25   business have started to move in the right direction.  UP denies the remaining

26   allegations of this paragraph.

27   110.   UP denies the allegations in this paragraph.

28   111.   UP admits that a document titled Surface Transportation Board, Office

1   of Economics, Environmental Analysis & Administration Section of Economics,

2   January 16, 2009, Study of Railroad Rates: 1985-2007, contained the quoted

3   language in this paragraph attributed to it.  UP denies Plaintiff's characterization of

4   that document.  UP admits that a document produced in the Putative Class Action

5   contained the quoted language in the first sentence of this paragraph, but denies

6   Plaintiff's characterization of the document.  UP denies the remaining allegations in

7   this paragraph.

8     112.   UP admits that a document titled, The Current Financial State Of The

9   Class I Freight Rail Industry ("Staff Report") stated that quoted language in this

10  paragraph and contains a chart similar to Figure 1.  UP denies Plaintiff's

11  characterizations of the Staff Report, and denies Plaintiff's implication that the

12  statements in the Staff Report concern either fuel prices or fuel surcharges.  UP

13  denies the remaining allegations in this paragraph.

14  <center>**COUNT I**</center>

15    113.   UP incorporates by reference its responses to the preceding numbered

16  paragraphs.

17    114.   UP denies the allegations in this paragraph.

18    115.   UP denies the allegations in this paragraph.

19    116.   UP denies the allegations in this paragraph.

20    117.   UP denies the allegations in this paragraph.

21    118.   UP denies the allegations in this paragraph, including all of its sub-

22  parts.

23    119.   UP denies the allegations in this paragraph.

24  <center>**PLAINTIFF'S PRAYER FOR RELIEF**</center>

25    UP denies that Plaintiff is entitled to any of the relief it seeks.

26  <center>**DEMAND FOR JURY TRIAL**</center>

27    Defendant Union Pacific Railroad Company hereby demands trial by jury on

28  all issues so triable.

# UNION PACIFIC'S AFFIRMATIVE DEFENSES

UP asserts the following defenses without in any way alleging it has the burden of proof with respect to any of the defenses or that the Plaintiff is relieved of its burden to prove each and every element of its claims and damages, if any, to which Plaintiff claims it is entitled.  The defenses apply to each and every cause of action alleged.

## FIRST AFFIRMATIVE DEFENSE

### (Statute of Limitations)

120.   Plaintiff's claims are barred in whole or in part by the applicable statute of limitations, including 15 U.S.C. §15b.  Plaintiff's claims are also barred in whole or in part by limitations on the time for bringing claims specified in particular contracts between Plaintiff and UP.

## SECOND AFFIRMATIVE DEFENSE

### (Estoppel, Waiver)

121.   Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel and waiver.

## THIRD AFFIRMATIVE DEFENSE

### (10706 Statutory Protections)

122.   Defendants' alleged conduct with respect to communications concerning interline railroad services and other railroad services was privileged under law, including, but not limited to, the statutory privileges described in 49 U.S.C. § 10706.

## FOURTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

124.   Plaintiff is barred from recovery by reason of its failure to mitigate, minimize or avoid the damages alleged in the Complaint.

1

## FIFTH AFFIRMATIVE DEFENSE

2

### (Laches)

3

125.   Plaintiff's claims are barred by the doctrine of laches.

4

## SIXTH AFFIRMATIVE DEFENSE

5

### (Exclusive Jurisdiction)

6

126.   Plaintiff's claims are barred under federal laws granting exclusive

7

jurisdiction to the Surface Transportation Board ("STB"), including 49 U.S.C. §

8

10501, et seq., to the extent those claims are based on conduct that is subject to the

9

jurisdiction of the STB.

10

## SEVENTH AFFIRMATIVE DEFENSE

11

### (Set-Off)

12

127.   Any alleged claim for damages by Plaintiff Kia Motors America, Inc.

13

is subject to set-off against any money that Kia Motors America, Inc. owes to UP

14

for rail services provided by UP.

15

## EIGHTH AFFIRMATIVE DEFENSE

16

### (Standing)

17

128.   Plaintiff lacks standing to assert the antitrust claims that they allege.

18

## NINTH AFFIRMATIVE DEFENSE

19

### (Pass-On)

20

129.   Plaintiff's claims are barred in whole or in part by the pass-on defense.

21

## TENTH AFFIRMATIVE DEFENSE

22

### (Implied Preemption)

23

130.   Plaintiff's claims are preempted by virtue of the federal regulatory

24

scheme governing the provision of rail freight services, including under the filed

25

rate doctrine.

26

## ELEVENTH AFFIRMATIVE DEFENSE

27

### (Unclean Hands)

28

131.   Plaintiff's claims are barred, in whole or in part, by the doctrine of

1  unclean hands.

2  ### TWELFTH AFFIRMATIVE DEFENSE

3  ### (Failure to State a Claim for Relief)

4  132.    Plaintiff fails to state facts or claims against UP sufficient to state a

5  claim upon which relief may be granted.

6  ### THIRTEENTH AFFIRMATIVE DEFENSE

7  ### (Arbitration)

8  133.   Plaintiff's claims against UP are barred, in whole or in part, to the

9  extent that Plaintiff agreed to arbitrate claims related to its relevant contracts with

10  UP.

11  ### FOURTEENTH AFFIRMATIVE DEFENSE

12  ### (49 U.S.C. § 11101)

13  134.   Plaintiff's claims are barred, in whole or in part, because those claims

14  improperly infer the existence of a conspiracy based on UP's common carrier

15  obligation to disclose rates and provide shippers with advance notice of rate

16  changes pursuant to 49 U.S.C. §  11101.

17  ### FIFTEENTH AFFIRMATIVE DEFENSE

18  135.   UP incorporates any other affirmative defenses pleaded by other

19  Defendants that do not conflict with UP's affirmative defenses.

20  ### PRAYER FOR RELIEF

21  WHEREFORE, UP prays for relief from judgement as follows:

22  1.      That judgement be entered in favor of UP and against Plaintiff on all

23  its claims;

24  2.      That Plaintiff take nothing by its Complaint;

25  3.      That the Complaint be dismissed with prejudice;

26  4.      That UP recover all attorneys' fees, costs, and expenses incurred in

27  defense of this action; and,

28  5.      That the Court grant UP such further relief as the Court deems just and

1  proper.

2

3

4  Dated: December 16, 2019          JONES DAY

5

6                                    By: /s/ Tyrone R. Childress

7                                    Tyrone R. Childress (C.A. Bar No. 136795)
                                     Erna Mamikonyan (C.A. Bar No. 302000)
8                                    Kelsey S. Bryan (C.A. Bar No. 307577)
9                                    JONES DAY
                                     555 South Flower Street
10                                   Fiftieth Floor
                                     Los Angeles, CA  90071-2300
11                                   Telephone: +1.213.489.3939
12                                   Facsimile:  +1.213.243.2589
                                     E-mail:  tchildress@jonesday.com
13                                   E-mail:  emamikonyan@jonesday.com
14                                   E-mail:  kbryan@jonesday.com

15                                   John M. Majoras  (D.C. Bar No. 474267, *pro
16                                   hac* forthcoming)
                                     Kristen A. Lejnieks (D.C. Bar No. 502136,
17                                   *pro hac* forthcoming)
18                                   JONES DAY
                                     51 Louisiana Avenue, N.W.
19                                   Washington, D.C.  20001.2113
20                                   Telephone:  +1.202.879.3939
                                     Facsimile:  +1.202.626.1700
21                                   E-mail:  jmmajoras@jonesday.com
22                                   E-mail:  kalejnieks@jonesday.com

23

24                                   Attorneys for Defendant
                                     UNION PACIFIC RAILROAD COMPANY
25

26

27

28

Union Pacific Railroad Company's Answer to
Plaintiff's Complaint 8:19-cv-01881